1  KAREN A. OVERSTREET
    Bankruptcy Judge
2  United States Courthouse
    700 Stewart St., Suite 6310
3  Seattle, WA 98101
    206-370-5330

4

5                  UNITED STATES BANKRUPTCY COURT
                 WESTERN DISTRICT OF WASHINGTON
6                      AT SEATTLE

| | | |
|---|---|---|
| 7 In re | ) | |
| | ) | Chapter 11 |
| 8 JILL JENSEN-AMES, | ) | |
| | ) | |
| 9 | ) | |
| Debtor. | ) | |
| 10 | ) | Bankruptcy No. 10-14185 |
| | ) | |
| 11 _____ | ) | |
| | ) | |
| 12 JOHN GELBER and TERRY SMITH, | ) | Adversary No. 10-01684 |
| a married couple, | ) | |
| 13 | ) | |
| Plaintiffs. | ) | |
| 14 | ) | |
| v. | ) | **MEMORANDUM DECISION ON** |
| 15 | ) | **MOTION FOR SUMMARY JUDGMENT** |
| JILL JENSEN-AMES and JEREMY | ) | |
| 16 AMES, and the marital | ) | **NOT FOR PUBLICATION** |
| community composed thereof, | ) | |
| 17 | ) | |
| Defendants. | ) | |
| 18 _____ | ) | |

19

20      This matter came before the Court on March 4, 2011, on the

21  motion for summary judgment filed by plaintiffs John Gelber and

22  Terry Smith.  Plaintiffs' motion seeks summary judgment that

23  defendants are liable to Mr. Gelber in the amount of $86,954.26 and

24  to Ms. Smith in the amount of $22,341.59 and that such obligations

25  are nondischargeable under Bankruptcy Code § 523(a)(19).[1]  The

26  _____

27      [1]  Unless otherwise indicated, all Code, Chapter, Section and
    Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 *et seq.*
    and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et*
28  *seq.*

    MEMORANDUM DECISION - 1

1  Court has considered the plaintiffs' pleadings and declarations as
2  well as the responsive pleadings and declarations filed by
3  defendants Jeremy Ames and Jill Jensen-Ames.  For the following
4  reasons, the Court finds that plaintiff Smith is entitled to
5  summary judgment against Ms. Jensen-Ames and her marital community,
6  but plaintiff Gelber is not entitled to summary judgment against
7  the defendants.

## I.  JURISDICTION

9      The Court has jurisdiction of this matter pursuant to 28
10  U.S.C. §§ 157 and 1334 and this is a core proceeding under 28
11  U.S.C. § 157(b)(2)(I), (J).

## II.  FINDINGS OF FACT

13      The Court makes the following findings of fact.
14      Defendant Jill Jensen-Ames ("Ms. Jensen-Ames")is a real estate
15  agent who worked with mortgage broker Katherine Swanberg ("Ms.
16  Swanberg").  Declaration of Terry Smith (Dkt. #14, "Smith Decl."),
17  ¶¶1-5.  Defendant Jeremy Ames is the spouse of Ms. Jensen-Ames.
18  Answer, Dkt. #5, ¶1.  Ms. Jensen-Ames and Ms. Swanberg advertised
19  and hosted seminars on investment opportunities.  Smith Decl. ¶5-6.
20      In July 2006, Ms. Jensen-Ames invited plaintiff John Gelber
21  ("Mr. Gelber")to a seminar regarding investment opportunities in
22  land in Nicaragua known as the Seaside Marina Spa & Golf Resort
23  ("Seaside Marina").  Declaration of John Gelber (Dkt. #13, "Gelber
24  Decl."), ¶2-8, Exhibit B.  Mr. Gelber has never been to Nicaragua.
25  Gelber Decl., ¶16.  On August 3, 2006, Mr. Gelber bought a
26  purchase option for a lot in Seaside Marina for $29,000.  Mr.
27  Gelber traded up for a golf course lot a few days later for an
28  additional $35,000.  Gelber Decl., Ex. E.; Declaration of Jill

MEMORANDUM DECISION - 2

1  Jensen-Ames (Dkt. #20, "Jensen-Ames Decl."), Exhibit, J, K.

2     The Seaside Marina project was pitched by Ms. Jensen-Ames as a

3  group investment in her solicitation emails:

>           Right now I am gathering an interest list to
>           see who may be interested in partnering with me
>           for these developments.  If there is enough
>           interest I will be putting together a
>           presentation to show pictures and explain the
>           different projects.  There are several
>           different strategies and projects including
>           short term land development, vacation rental,
>           resort/hotel ownership, with long term cash
>           flow.  This may also be a great place to invest
>           an IRA.  Ideally we are looking for a minimum
>           investment of $50,000 per person.

Gelber Decl., Ex. A (Email from Ms. Jensen-Ames).  Under the Offer

to Purchase between Nicaragua Developments S.A. (the seller) and

Nicaragua Horizons LLC (the purchaser), the purchaser agreed to

acquire the entire project for a purchase price of $350,000.

Jensen-Ames Decl., Ex. L.  The Seaside Marina project required

substantial involvement from third parties in terms of development

before any investor would realize a profit on his or her

investment.  Gelber Decl., Ex. C.

     The Lot Reservation and Priority Position Agreement for

Seaside Marina, between Nicaragua Horizons LLC and the Gelber IRA,

states

>           this Agreement is neither an offer to sell nor
>           a sale of the Lot or the Property, that the Lot
>           or the Property may or may not be available for
>           sale, and that prior to the execution of the
>           Option Agreement, this Agreement may be
>           cancelled by either party upon written notice
>           to the other party.

Jensen-Ames Decl, Ex. K, ¶ 7. However, the Option Agreement to

Acquire Purchase Rights ("Option Agreement"), grants Mr. Gelber the

right to take title to a lot as soon as it is acquired. Gelber

MEMORANDUM DECISION - 3

Decl., Exhibit E, ¶¶ 4, 5.

The funds used to purchase the Seaside Marina lot were paid by a check from Equity Trust Company Custodian FBO John Lewis Gelber IRA. Equity Trust Company, as custodian for plaintiffs' IRAs, was the party to the relevant agreements at issue in this case. Jensen-Ames Decl., Ex. E, I, K; Smith Decl., Ex. C. Equity Trust is a self directed IRA custodian, and Mr. Gelber and Ms. Smith each have real estate IRAs through Equity Trust. Gelber Decl. ¶12., Exhibit D.

Ms. Smith met with Ms. Jensen-Ames in March 2007 to discuss investing in a different real property project in Nicaragua known as Los Congos. Smith Decl. ¶14. Ms. Smith has also never been to Nicaragua. Smith Decl., ¶24. Ms. Smith paid $17,000 under a Lot Reservation Agreement for a lot in Los Congos. Smith Decl., ¶15; *see also* Lot Reservation Agreement, Smith Decl., Exhibit C. The "Buyer" under the Lot Reservation Agreement was Equity Trust company, Custodian, FBO Terry Smith IRA. Smith Decl., ¶17; *see also* Lot Reservation Agreement, Smith Decl., Exhibit C.

At the time Ms. Smith made her investment, individual lots in the Los Congos Project were not available for purchase because significant permitting and development was still needed. Smith Decl., Exhibit C, F, G. Although Ms. Smith thought she was investing in a particular parcel of property in Los Congos, the agreements reflect that the title to the property would not pass to her. Smith Decl., Exhibit C. Instead, Ms. Smith authorized Ms. Swanberg, acting in concert with Ms. Jensen-Ames, to accept title to the lots. Under the Lot Reservation Agreement, the Los Congos lots were to be held and sold by Laguna SA. Smith Decl.,

MEMORANDUM DECISION - 4

Exhibit C.  The Lot Reservation Agreement refers to the bulk sale of 20 lots, and says that "the investors will retain the earnings from the retail sales."  Smith Decl., Exhibit C.  There is no document providing for the transfer of any specific parcel of property to Ms. Smith, and no document evidencing that Ms. Smith had any control over the Los Congos project.  Ms. Smith believed that she would not take title to the property, but rather that she would be entitled to proceeds upon the sale of "her lot."  Smith Decl., ¶21.   All of the Los Congos investors' funds were placed into a single escrow account for purposes of purchasing the Los Congos properties.  Jensen-Ames Decl. ¶9.  The funds were transmitted to the developer in a single wire transfer.  *Id.*  The transactional document with "Society Luguna" states that the lots will be sold to Ms. Swanberg for $806,000.  Smith Decl., Exhibit C. The document refers to the "group of investors represented by Katherine Swanberg...." Smith Decl., Exhibit C, page 9.  None of the investors were individually named.  Smith Decl., Exhibit C.  In an April 18, 2008, update on the status of the project from Jeffrey Finch to Ms. Jensen-Ames and Ms. Swanberg, the developer describes activities related to permitting and development of the project, and repeatedly refers to the "investor group."  Smith Decl., Exhibit F.

Neither the Seaside Marina investment offering nor the Los Congos investment offering were registered as a security pursuant to RCW 21.20.140.  Ms. Jensen-Ames was not a registered securities salesperson under RCW 21.20.040.

The Washington Department of Financial Institutions ("DFI") investigated the Los Congos transaction, and issued a Statement of

MEMORANDUM DECISION - 5

Charges and Notice of Intent to Enter an Order to Cease and Desist

on December 23, 2009.  Declaration of Stacy Goodman ("Goodman

Dec."), Ex. A.  Ms. Jensen-Ames entered into a Consent Order with

DFI under which she neither admitted nor denied the findings and

conclusions contained in the Statement of Charges. Goodman Decl.

Ex. B.  The Consent Order incorporates by reference the Statement

of Charges. Goodman Decl. Ex. B, p. 1.  The Statement of Charges

includes the following conclusions of law:

> (1) The offer and/or sale of Los Congos
> investment opportunity constitutes the offer or
> sale of a security as defined in RCW
> 21.20.005(10) and (12).  The investment
> opportunity meets the definition of an
> investment contract.

> (2) The offer and/or sale of said securities
> violated RCW 21.20.140, the securities
> registration provision of the Securities Act,
> because Laguna S.A. offerings were not
> registered in the State of Washington.

> (3) The offer and/or sale of said securities
> was made in violation of RCW 21.20.040, the
> provision of the Securities Act which requires
> registration of securities salespersons and
> broker-dealers, because Respondents [including
> defendant Jensen-Ames] sold securities while
> not registered as a securities salesperson or
> broker-dealer in the State of Washington.

Goodman Decl., Ex. A.  DFI focused on the fact that Laguna SA was

to retain title to the Los Congas properties in reaching its

conclusion that the transaction was an investment.  Goodman Decl.,

Ex. A, pp. 2-5.

Ms. Jensen-Ames filed a petition for relief under Chapter 11

of the Bankruptcy Code on April 15, 2010.  Case No. 10-14185, Dkt.

#1.  The Consent Order with DFI was executed by Ms. Jensen-Ames on

May 20, 2010, after the bankruptcy case was filed. On July 23,

MEMORANDUM DECISION - 6

2010, Ms. Jensen-Ames filed a motion in her bankruptcy case for approval of the settlement with DFI. Ms. Jensen-Ames attached a copy of the Consent Order to the motion. Case No. 10-14185, Dkt. 44, Exhibit B. In the motion, Ms. Jensen-Ames summarized the charges against her in the Statement of Charges, and stated that she disputed the charges but determined that it was in her interest to settle the matter rather than incur significant legal fees in contesting the charges. Case No. 10-14185, Dkt. 44, pp. 2-3. On September 10, 2010, this Court entered an order approving the settlement by way of the Consent Order. Case No. 10-14185, Dkt. 56.

There is no evidence that the Consent Order was executed by the DFI, or that it was filed with any other court. Jensen-Ames Decl., ¶16.

### III. CONCLUSIONS OF LAW

Based upon the foregoing findings of fact, the Court makes the following conclusions of law.

**A.    Summary Judgment Standard.**

To prevail on a motion for summary judgment, the moving party must show by reference to pleadings, discovery, admissions, and affidavits, if any, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(a)(c), Fed.R.Civ.P.; Rule 7056. If the moving party meets its burden, the burden of production then shifts to the nonmoving party, who must produce by admissible evidence "specific facts showing that there is a genuine issue for trial." Rule 7056(e). The moving party is entitled to a judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect

MEMORANDUM DECISION - 7

to which it has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986).  *See also In re Irizarry*, 171 B.R. 874 (9th Cir. BAP 1994).

**B.  Standing - Real Party in Interest.**

Defendants contend that the plaintiffs are not the real parties in interest in this proceeding because they are not parties to the contracts at issue.  Instead, the trustees of their retirement accounts are parties to the contracts.  Plaintiffs respond that because they are the express and intended beneficiaries of the Investment Retirement Account (IRA) entities, which were parties to the agreements at issue, they are the real parties in interest and may prosecute these actions in their names.

Rule 17, Fed.R.Civ.P., requires "every action shall be prosecuted in the name of the real party in interest" and by the person or entity with the "capacity to sue."  Rule 17 allows a federal court to entertain a suit at the instance of any party to whom the relevant substantive law grants a cause of action. *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986). Here, the substantive law is found in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure. Under Rule 4007(a), Fed.R.Bank.P., a debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.  A "creditor" is defined under Section 101(10), in relevant part, as an entity that has a claim against the debtor that arose at the time of or before the order of relief concerning the debtor. Moreover, under Section 101(5) a "claim" means a right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment.

MEMORANDUM DECISION - 8

The word "claim" in the Bankruptcy Code generally refers to the right to payment recognized under state law, since the basic rule in federal bankruptcy proceedings is that state law governs the substance of claims against the debtor's estate. *Travelers, Cas. and Sur. Co. of America v. Pacific Gas and Electric. Co.*, 127 S.Ct. 1199 (2007). Under Washington law, when one person for valuable consideration contracts with another to perform some act for the benefit of a third person, that third person who would enjoy the benefit of the act may maintain an action for breach of such contract. *Grand Lodge of the Scandinavian Fraternity of America, Dist. No. 7 v. U.S. Fidelity & Guaranty Co.*, 2 Wash.2d 561, 569 (1940). *See also Wolfe v. Morgan*, 11 Wash. App. 738 (Div. 1 1974) (holding that donee third party beneficiaries are entitled to sue to enforce the contractual obligations assumed by the actual parties to the contract).

In this case, Equity Trust Company, as custodian for plaintiffs' IRAs, was the party to each of the relevant agreements at issue. *See* Jensen-Ames Decl., Ex. I and K; Gelber Decl., Ex. E; and Smith Decl., Ex. C. The agreements, however, expressly indicate that Equity Trust Company is operating for the benefit of (e.g. "fbo") both John Gelber and Terry Smith. Therefore, the Court finds that John Gelber and Terry Smith were the express and intended third-party beneficiaries of the agreements. As such, the plaintiffs have a right to sue to enforce the terms of the agreements. Because the plaintiffs have such a right, which arose prior to the filing of Ms. Jensen-Ames' bankruptcy, they have a "right to payment" sufficient to support a claim in bankruptcy, thereby making each a creditor. As creditors, plaintiffs have

MEMORANDUM DECISION - 9

standing to pursue their complaint to determine the discheargeability of the debt.

**C.   Burden of Proof.**

Plaintiffs have the burden of proving each element of Section 523(a)(19) by a preponderance of the evidence.

**D.   The Claim of Plaintiff Smith.**

It is undisputed that Ms. Smith invested $17,000 in the Los Congos project.  Section 523(a)(19)renders nondischargeable debts for violation of state or federal securities laws, provided plaintiffs can meet the requirements of the two subsections of Section 523(a)(19).  Section 523 provides that a discharge does not discharge any debt

> (19) that—
> (A) is for—
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
> (B) results, before, on, or after the date on which the petition was filed, from—
> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
> (ii) any settlement agreement entered into by the debtor; or
> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

**1.   <u>Section 523(a)(19)(A)</u>.**

Under Subsection (A), the Court must determine whether the Ms. Smith debt is for a violation of any state securities law.  There

MEMORANDUM DECISION - 10

are two ways to find that (A) is met in this case.  First, the
Court could find that the Consent Order establishes Ms. Jensen-
Ames' liability for a securities violation under Washington state
law.  Second, the Court could determine that the undisputed facts
lead to a conclusion as a matter of law that Ms. Jensen-Ames owes
Ms. Smith a debt for violation of the Washington securities law.

Under RCW 21.20.140, it is unlawful in Washington to offer or
sell any "security" unless the security is registered or the
security is exempt.[2]  The Consent Order incorporates by reference
the Statement of Charges, which concludes that Ms. Jensen-Ames
violated this statute by selling an unregistered security in the
form of an interest in the Los Congos project.  Ms. Jensen-Ames
does not dispute that she signed the Consent Order but insists that
she has never seen a copy of that order executed by the DFI.
Indeed, the copy of the Consent Order attached as Exhibit B to the
Smith Decl. is not signed by a representative of the DFI nor is
there any indication that it was filed in any court.  Given the
lack of proof that the Consent Order has become effective by
approval of the DFI, the Court finds on summary judgment that the
order does not conclusively establish that Ms. Jensen-Ames violated
Washington securities laws.

Even if the Consent Order does not establish Ms. Jensen-Ames'
liability for a securities violation, however, the Court finds that
the undisputed facts in the case mandate a finding that she did
violate state securities laws in selling Ms. Smith the interest in

_____

[2]  Defendants have not argued that if the alleged "securities"
at issue meet the definition of a security under Washington law, an
exception applies.

MEMORANDUM DECISION - 11

the Los Congos project.  RCW 21.20.005(12)(a) defines a "security"
as

> [A]ny note; stock; treasury stock; bond;
> debenture; evidence of indebtedness;
> certificate of interest or participation in any
> profit-sharing agreement; collateral-trust
> certificate; preorganization certificate or
> subscription; transferable share; investment
> contract; investment of money or other
> consideration in the risk capital of a venture
> with the expectation of some valuable benefit
> to the investor where the investor does not
> receive the right to exercise practical and
> actual control over the managerial decisions of
> the venture; voting-trust certificate;
> certificate of deposit for a security;
> fractional undivided interest in an oil, gas,
> or mineral lease or in payments out of
> production under a lease, right, or royalty;
> charitable gift annuity; any put, call,
> straddle, option, or privilege on any security,
> certificate of deposit, or group or index of
> securities, including any interest therein or
> based on the value thereof; or any put, call,
> straddle, option, or privilege entered into on
> a national securities exchange relating to
> foreign currency; or, in general, any interest
> or instrument commonly known as a "security,"
> or any certificate of interest or participation
> in, temporary or interim certificate for,
> receipt for, guarantee of, or warrant or right
> to subscribe to or purchase, any security under
> this subsection. This subsection applies
> whether or not the security is evidenced by a
> written document.

Under federal law, a security is "a contract, transaction or
scheme whereby a person invests his money in a common enterprise
and is led to expect profits solely from the efforts of the
promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293,
298-99 (1946).  Washington courts apply the following modified
*Howey* test in defining a security: (1) an investment of money, (2)
in a common enterprise, and (3) the efforts of the promoter or a
third party must have been fundamentally significant ones that
affected the investment's success or failure. *Cellular*

MEMORANDUM DECISION - 12

1  *Engineering, Ltd. v. O'Neill*, 118 Wash.2d 16, 24, 820 P.2d 941
2  (1991).

3      The documents executed by Ms. Smith, which are attached to her
4  declaration filed in support of the motion for summary judgment,
5  demonstrate that the investment she made in Los Congos was the
6  purchase of a security within the meaning of the above cited
7  authorities.  Although Ms. Smith thought she was investing in a
8  particular parcel of property in Nicaragua, the agreements reflect
9  that the title to that property would not pass to her.  Instead,
10 she authorized Katherine Swanberg, acting in concert with
11 Ms. Jensen-Ames, to accept title to 16 lots to be held by Laguna
12 SA, the entity which was to own and develop the project.  The Lot
13 Reservation Agreement, attached as Ex. C to the Smith Decl., refers
14 to the bulk sale of 20 lots and that "the investors will retain the
15 earnings from the retail sales."  Further, the documents state that
16 the property (referred to as 16 lots) will be sold to Ms. Swanberg
17 for $806,000, and specifically to the "group of investors
18 represented by Katherine Swanberg...."  There is no document
19 providing for the transfer of any specific parcel of property to
20 Ms. Smith and no document evidencing that she had any control over
21 the Los Congos project.

22      Ms. Smith's declaration makes it clear that she was looking to
23 Ms. Jensen-Ames and others to develop the property, market it, sell
24 it, and remit the profit to Ms. Smith. *See* Smith Decl., ¶¶ 19-22.
25 Ms. Smith had never been to Nicaragua and did not have any control
26 over the activities related to the sales or development of Los
27 Congos.  *Id.* at ¶ 23, 24.  Instead, the evidence reflects control
28 of the project by Ms. Jensen-Ames, Ms. Swanberg, and the local

MEMORANDUM DECISION - 13

developer of the property.  Exhibit F to the Smith Decl., an April
18, 2008, update on the status of the project, describes all of the
activities related to permitting and development of the project,
and repeatedly refers to the "investor group."  At the time
Ms. Smith made her investment, individual lots in the Los Congos
project were not ready for purchase in that significant permitting
and development was still required to be done.

Ms. Jensen-Ames denies that she pooled investors' funds for
the Los Congos property but admits that she had all of the
investors' money placed in a single escrow account and transmitted
to the developer in a single wire transfer.  Decl. of Jensen-Ames,
¶ 9.  Pooling was required by the underlying transactional
documents, however.  The transactional agreement is between
"Society Laguna" and Ms. Swanberg on behalf of a group of
"investors."  Smith Decl., Ex. C.  None of the investors was named
in the agreement and none of their funds were held in escrow for
them pending the sale of an individual parcel to them.

The Court finds that within the meaning of RCW
21.20.005(12)(a), Ms. Smith made an "investment of money or other
consideration in the risk capital of a venture with the expectation
of some valuable benefit to the investor" where she did not
"receive the right to exercise practical and actual control over
the managerial decisions of the venture...." On these facts, the
Court finds that the transaction with Ms. Smith constituted (1) an
investment of money, (2) in a common enterprise, (3) in which the
efforts of the promoter or a third party were fundamentally
significant ones that affected the investment's success or failure.
Like the investment in *Howey*, the Los Congos investment was

MEMORANDUM DECISION - 14

marketed as more than just a fee simple interest in land, but instead as the opportunity to invest in a large project that would be developed and marketed by third parties whose efforts would produce a profit that would be shared. *Howey*, at 1103. Characterizing the transaction as an option to purchase real estate served "as a convenient method of determining the investors' allocable shares of the profits." *Id*.

Ms. Smith's testimony establishes that the salesperson who dealt directly with her was Ms. Jensen-Ames. There is no dispute that the Los Congos investment offering was not registered as required by RCW 21.20.140 and that Ms. Jensen-Ames was not a registered securities salesperson under RCW 21.20.040. Accordingly, the Court concludes that the undisputed facts demonstrate that the debt of Ms. Smith is for a violation of a state securities law.

### 2. **Section 523(a)(19)(B).**

Having met the requirements of subsection (A) of 523(a)(19), Ms. Smith must meet the requirements of Section 523(a)(19)(B) that the debt "result from" (i) a judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor; provided that any of the foregoing, if applicable, were entered before, on or after the petition date in the bankruptcy case. Plaintiffs contend that the Consent Order, which was signed by Ms. Jensen-Ames, satisfies the requirements of subsection (B).

MEMORANDUM DECISION - 15

For the same reasons the Court found that the Consent Order could not satisfy subsection A of Section 523(a)(19), the Court concludes that the Consent Order may not stand as the judgment, order or settlement agreement under Section 523(a)(19)(B). The question then becomes, however, whether the bankruptcy court can enter a complying judgment or order under the "any Federal proceeding" language of (i), or must the judgment or order be entered by a nonbankruptcy court?

Ms. Smith relies on *Frost v. Civiello (In re Civiello)*, 348 B.R. 459 (Bankr. N.D. Ohio 2006). Like the plaintiff in this case, the plaintiff in *Civiello* did not have a pre or post petition judgment or order establishing the debtor's obligation to the plaintiff. Instead, the *Civiello* court indicated at the end of its opinion that *it* would enter the judgment that would satisfy Section 523(a)(19)(B) based upon the defendant's strict liability under state law. Defendants contend that subsection (B) can be satisfied only by a judgment or order from a nonbankruptcy court, citing *In re Jafari*, 401 B.R. 494 (Bankr. D. Colo. 2009). *See also Speck v. Demers*, 2009 WL 3681675 (Bankr. E.D. Wash. 2009); *Holland v. Zimmerman (In re Zimmerman)*, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006).

As originally enacted, Section 523(a)(19) required a prepetition judgment, order or settlement establishing the debtor's liability. Thus, there was no issue about the bankruptcy court being the court to enter the judgment referenced in the statute. In 2005, Congress amended the language of the statute as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 by adding "results, before, on, or after the date on which the

MEMORANDUM DECISION - 16

petition was filed, from...."  Based upon this change, Ms. Smith
argues that the removal of the requirement of a prebankruptcy
determination authorizes the Court to determine both the underlying
liability and to enter a judgment of nondischargeablity.

*Jafari* relies heavily on the legislative history to Section
523(a)(19) in concluding that the 2005 amendment was not intended
to permit the bankruptcy court to determine the underlying
liability.  That conclusion, however, flies in the face of the
unambiguous language of the statute which proclaims broadly that a
judgment or order entered in "any Federal or state
judicial...proceeding" before, on or after the petition date
satisfies Section 523(a)(19)(B).  If anything, the overriding goal
of the amendment to the statute was to expand the rights of victims
of securities fraud to prevent the discharge of their debts by
holding "accountable those who violate securities laws" and by
eliminating the requirement that victims obtain a judgment
establishing the debt prior to bankruptcy.  *See* S. Rep. No. 107-146
at 2, 10 (2002).

Other courts have concluded, as this Court does, that the
clear language of Section 523(a)(19)(B) permits the bankruptcy
court to establish the debtor's liability for a securities
violation.  *See In re Chan*, 355 B.R. 494, 504 (E.D. Penn. 2006);
*Jansma v. Jansma*, 2010 WL 282511 (Bankr. N.D. Ill. 2010).
Moreover, in the Ninth Circuit, the bankruptcy court's jurisdiction
to enter a judgment establishing the monetary amount of a claim in
connection with making a nondischargeability determination is not
in question.  *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864 (9th
Cir. 2005), *cert. denied*, *Sasson v. Sokoloff*, 547 U.S. 1206 (2006).

MEMORANDUM DECISION - 17

The *Jafari* court acknowledged its authority to determine liability for fraud under Section 523(a)(2), where no prior state court determination had been made, and attempted to distinguish the language of that statute from Section 523(a)(19). This Court respectfully disagrees with that analysis, and, based upon the Ninth Circuit's broad interpretation of the bankruptcy court's authority to make determinations of liability in connection with dischargeability determinations, concludes that it may enter a summary judgment in favor of plaintiff Smith as to Ms. Jensen-Ames' liability for a securities violation.

Washington law provides for strict liability where a person offers or sells a security without registration and in violation of RCW 21.20.140. RCW 21.20.430(1). Under the strict liability provision, RCW 21.20.430(1), Ms. Jensen-Ames is liable for any "consideration paid for the security, together with interest at 8% per annum from the date of payment, costs, and reasonable attorneys' fees."[3] Based upon the foregoing, the Court finds that Ms. Jensen-Ames is liable to plaintiff Smith in the amount of $17,000, plus the other amounts allowable under RCW 21.20.430(1).

### 3. **The Liability of Mr. Ames**.

Washington law imposes joint and several liability "to the same extent as the seller" on third-party agents who "materially aid" in the transaction. RCW 21.20.430(3). Although plaintiffs

---

[3] Defendants contend that because Ms. Smith made only a down payment on the investment of $17,000 and failed to pay the entire balance of $50,000, she defaulted under her investment contract. Because the Court finds that the investment was unlawful under Washington state securities laws, the fact that Ms. Smith never paid the full amount due under the investment agreement is irrelevant.

MEMORANDUM DECISION - 18

contend there is no question that Mr. Ames materially aided the Los Congos transaction, the evidence does not support that contention. In her declaration, Ms. Smith does not describe any specific contact with Mr. Ames in connection with the Los Congos investment. Although she contends that Mr. Ames had an ownership investment in Guidant Financial Group, which is referenced in some of the emails (*e.g.*, Ex. A, Smith Decl.), there is no evidence of such an ownership interest by Mr. Ames. Accordingly, the Court finds that plaintiff Smith is not entitled to summary judgment against Mr. Ames personally.

However, under Washington law, a debt incurred by either spouse during the marriage is presumptively a community debt. *Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 25 Wash. App. 351, 353, 613 P.2d 169 (1980). There is no dispute that Mr. Ames and Ms. Jensen-Ames were married during all of the events related to the Los Congos transaction. Mr. Ames has not provided any evidence to rebut the presumption that the obligation to Ms. Smith is a community debt. Ms. Smith is therefore entitled to summary judgment against the defendants' marital community.

**E.    The Claim of Defendant Gelber.**

The facts related to the Seaside Mariana project share some similarities with the Los Congos project. The Seaside Marina project was marketed by Ms. Jensen-Ames in her emails as a group investment in a large real estate project. *See* p. 3, *supra*. The Seaside project required substantial involvement from third parties to develop the project in order to provide a return to the investors. Mr. Gelber, however, entered into a transaction that entitled him to exercise an option to purchase a specific lot in

MEMORANDUM DECISION - 19

the Seaside Mariana development. Gelber Decl., Ex. D, Ex. E. The
Letter of Intent (Ex. D) and the Option Agreement to Acquire
Purchase Rights (Ex. E) look more like a traditional real estate
transaction, however, in contrast to the documents related to the
Los Congos project. The purchase option agreement is between Mr.
Gleber's IRA and Nicaragua Horizons, LLC, a Washington limited
liability company. On the other hand, the Lot Reservation and
Priority Position Agreement between Nicaragua Horizons LLC and the
Gelber IRA makes it clear that: "this Agreement is neither an offer
to sell nor a sale of the Lot or the Property, that the Lot or the
Property may or may not be available for sale, and that prior to
the execution of the Option Agreement, this Agreement may be
cancelled by either party upon written notice to the other party."
Jensen-Ames Decl, Ex. K, ¶ 7. Further, evidence of the group
nature of the investment is found in the Offer to Purchase between
Nicaragua Developments S.A. (the seller) and Nicaragua Horizons LLC
(the purchaser), in that pursuant to the agreement, the purchaser
agreed to acquire the entire project for a purchase price of
$350,000. *Id.*, Ex. L. Plaintiffs put nothing in the record,
however, that the funds of many investors were in fact pooled in
connection with the purchase of the project.

On this record, the Court finds that there are disputed issues
of material fact as to whether the Seaside Marina investment was
made in connection with a "common enterprise" or that the efforts
of Ms. Jensen-Ames were "fundamentally significant ones that
affected the investment's success or failure." Accordingly, Mr.
Gelber's motion for summary judgment as to the Seaside investment
will be denied.

MEMORANDUM DECISION - 20

**CONCLUSION**

For the foregoing reasons, the Court finds that plaintiff Smith is entitled to summary judgment against Ms. Jensen-Ames and her marital community for amounts dictated under RCW 21.20.430(1). The Court finds that plaintiff Gelber is not entitled to summary judgment against the defendants. Plaintiffs may submit an order consistent with this ruling.

DATED this 29th day of March, 2011

*Karen A. Overstreet*
_____
Judge Karen A. Overstreet

MEMORANDUM DECISION – 21